GRIFFIN, J.
 

 We have two second-tier certiorari petitions before us that present the same issue for decision. In one, the Petitioner is Florida Medical & Injury Center, Inc. and Progressive Express Insurance Company is the Respondent. In the second case, the Petitioner is Progressive American Insurance Company and the Respondent is Preziosi West/East Chiropractic. Both Petitioners seek review of decisions of different circuit judges in the Eighteenth Judicial Circuit sitting on appeal in review of county court decisions involving personal injury protection [“PIP”] benefits. In each of the two decisions, the judges reached opposite conclusions. This issue is one that has similarly generated conflicting opinions across the state by more than two dozen county and circuit courts,
 
 [1]
 
 and is in need of resolution.
 

 
 *332
 
 The issue presented concerns a provision added by the Legislature in 2003 to Florida’s personal injury protection statute. Section 627.736(5)(e)l., Florida Statutes (2005), provides:
 

 (5) CHARGES FOR TREATMENT OF INJURED PERSONS.—
 

 (e)l. At the initial treatment or service provided, each physician, other licensed professional, clinic, or other medical institution providing medical services upon which a claim for personal injury protection benefits is based shall require an insured person ... to execute a disclosure and acknowledgment form, which reflects at a minimum that:
 

 a. The insured, or his or her guardian, must countersign the form attesting to the fact that the services set forth therein were actually rendered;
 

 b. The insured, or his or her guardian, has both the right and affirmative duty to confirm that the services were actually rendered;
 

 c. The insured, or his or her guardian, was not solicited by any person to seek any services from the medical provider;
 

 d. That the physician, other licensed professional, clinic, or other medical institution rendering services for which payment is being claimed explained the services to the insured or his or her guardian; and
 

 e.If the insured notifies the insurer in writing of a billing error, the insured may be entitled to a certain percentage of a reduction in the amounts paid by the insured’s motor vehicle insurer.
 

 The apparent twin purposes of this “Disclosure and Acknowledgement Form” [“D & A form”] are to enhance patient understanding of their treatment and to discourage fraud by unscrupulous medical providers, especially the submission of claims for services not actually performed on the patient.
 

 Subsection (5)(e)l. sets forth certain minimum disclosures that the provider must make to the patient and requires the patient to countersign the form attesting that the services identified were actually provided. The (5)(e)l. requirement of a D & A form applies only to the initial visit. Thereafter, pursuant to 5(e)9., the provider has to maintain a log of the services provided to the patient, which is countersigned by the patient to signify that the services were, in fact, provided. Subsection (5)(e)5. requires the original D & A form to be furnished to the insurer.
 

 The most familiar provision of the PIP statute to the courts of Florida is subsection (4). This provision has been a key
 
 *333
 
 part of the PIP statute since it was first enacted. It provides that PIP benefits become overdue if the insurer has not paid them within thirty days after the insurer is furnished with “written notice of the fact of a covered loss and of the amount of same.” § 627.736(4)(b), Fla. Stat. (2008).
 

 The insurers’ position in these cases and the many others arising across the state is a bold one: If a medical provider furnishes to the PIP insurer a flawed “disclosure and acknowledgement” form for the initial service or treatment it provided to the insured, the consequences are:
 

 (1) the insurer will be deemed not to have notice of the insured loss and accordingly will have no duty to the insured or provider to pay any benefits or take any other action with respect to the insured’s loss;
 

 (2) No payment to the provider will be' due for any subsequent treatment or services to the insured even if the requirements of section 627.736(5)(e)9. are met for subsequent treatments because by having failed to correctly submit the disclosure and acknowledgement form for the initial treatment there is no “claim” for which these treatments can be “subsequent.”
 

 (3) Any error in submission of the initial “disclosure and acknowledgement” form is irremediable.
 

 (4) Any defect in the form is not subject to waiver or estoppel by the conduct of the insurer and can be asserted by the insurer at any time, even if the insurer paid all or part of the claim without objecting to the defect.
 

 (5) The furnishing of a flawless “disclosure and acknowledgement” form is a condition precedent to the right of a medical provider to file suit against the insurer for benefits unpaid or only partly paid.
 

 With the qualified exception of the last of these contentions, we find no statutory or other legal authority for the insurers’ position.
 

 The cosmos that the insurers have constructed around the D & A form depends on the notion that a properly completed D & A form is an integral and indispensable element of the “notice of the fact of a covered loss and of the amount of same” referenced in 627.736(4)(b). Therefore, if a defective D & A form is submitted to an insurer, the insurer has not been given notice of the loss. If there is no notice, benefits can never be due.
 

 In both of the cases before us, even though the insurer had actual notice of “the fact of a covered loss and the amount of same,” and the claims were paid, albeit at a reduced rate, without any complaint about the D & A form, the insurers now contend that they have no duty to pay because there was a defect in completion of the D & A form. In both cases, the flaw was the attachment to the form of documents showing services rendered rather than listing them on the face of the form. As a review of the many decided cases demonstrates, however, the range of asserted flaws runs the gamut from the type of form used to the timing and manner of execution by either the insured or health care provider.
 
 See Millennium Diagnostic Imaging Ctr. v. United Auto. Ins. Co.,
 
 15 Fla. Supp. 180 (Fla. Dade Cty. Ct.2007);
 
 Eric G. Friedman, D.C., P.A., v. United Auto. Ins. Co.,
 
 13 Fla. Supp. 825 (Fla. Dade Cty. Ct.2006). For example, it has been argued that 5(e) requires the execution by both the patient and health care provider at the initial treatment, so the execution by either at any other time is a defect that will bar recovery for that treatment or any that follow.
 
 See Polinar-Nosel, M.D., P.A. v. United Auto. Ins. Co.,
 
 
 *334
 
 15 Fla. Supp. 1190 (Fla. Broward Cty. Ct.2005).
 

 A summary of the facts in each of the two cases we decide today will show the context in which the issue arises. Frederi-co Vega, a patient insured under personal injury protection coverage issued by Progressive was involved in an automobile accident in July 2006. He was treated by Respondent, Preziosi West/East Chiropractic Clinic. Preziosi submitted several bills to Progressive for PIP benefits in the amount of $1,681.38, plus interest, for medical, rehabilitative, nursing and remedial care rendered to Mr. Vega for dates of sendee ranging from August 11, 2006, through September 19, 2006. Said services were claimed to be medically necessary, reasonable and related to the July 2006 automobile accident. Preziosi also submitted a standard D & A form. The form was signed by Vega, dated August 11, 2000, and included the following:
 

 1. The services set forth below were actually rendered. This means that those services have already been provided.
 

 East/West Orlando Chiropractic Clinic
 

 Dr. Vincent Preziosi, D.C.
 

 Attached to the D & A form were detailed bills describing the services rendered and the cost. Progressive reimbursed Preziosi for each of its bills, but at a reduced rate.
 

 In November 2006, Preziosi provided Progressive with a pre-suit demand letter pursuant to section 627.736(11), Florida Statutes, requesting payment for the unpaid portion of Vega’s medical bills from dates of service August 11, 2006, to September 19, 2006. In the letter, Preziosi also requested insurance information from ■ Progressive, including copies of the insured’s declarations page, policy and PIP log. Progressive did not comply with Pre-ziosi’s demand letter and refused to pay.
 

 In December 2006, Preziosi filed suit against Progressive for the unpaid PIP benefits. Progressive filed an answer and affirmative defenses generally denying the allegations of the complaint, including Pre-ziosi’s allegation of compliance with all conditions precedent. Progressive also raised various affirmative defenses, including that the D & A form was incomplete. According to Progressive, Preziosi failed to satisfy all conditions precedent to obtain PIP benefits under the Progressive policy by failing to provide Progressive with a properly completed D & A form. Paragraph 1 of the D & A form submitted by Preziosi did not contain the required list or description of the services in the empty spaces provided.
 

 In March 2007, Progressive filed a motion for summary judgment. In this motion it argued that it was entitled to summary judgment as to all of the dates of service at issue in the complaint because Preziosi had not submitted a “complete” D & A form as required by section 627.736(5)(e), Florida Statutes (2005). As part of its motion for summary judgment, Progressive provided copies of the health insurance claim forms submitted to Progressive, as well as copies of all of Progressive’s explanations of benefits [“EOB’s”] in response to those bills. None of the EOB’s raised the issue of an incomplete D & A form. Progressive also provided copies of checks confirming its partial payment of the dates of sendee at issue and an affidavit from an employee of Progressive stating that Progressive received a D & A form from Preziosi.
 

 In May 2007, a hearing was held on Progressive’s motion for summary judgment. At the hearing, Progressive argued that although it had adjusted and partially paid Preziosi’s bills prior to the lawsuit, it was relieved of any responsibility to pay any benefits to Preziosi because Preziosi
 
 *335
 
 violated section 627.736(5)(e) by not specifying what services were provided to the insured in the space provided in the standard D & A form.
 
 [2]
 
 Progressive also argued that because section 627.736(5)(e) mandates that “the original
 
 completed
 
 disclosure and acknowledgement form
 
 shall
 
 be furnished to the insurer pursuant to paragraph (4)(b),” Preziosi’s failure to list or describe the services rendered on the face of the D & A form means that Progressive has not been provided with “written notice of a covered loss” as is required by the statute and therefore is relieved of
 
 any
 
 obligation to provide PIP benefits as a matter of law. Preziosi admitted that the form did not contain a description of the services rendered; however, it claimed substantial compliance because it had attached to the D & A form health insurance claim forms and medical notes describing the chiropractic treatment provided to Mr. Vega. Preziosi contended that, even if the D & A form was legally insufficient, it could not bar payment of the entire claim, but only the first date of service because the plain language of the statute says “[t]he requirements of this paragraph apply only with respect to the initial treatment.”
 
 See
 
 § 627.736(5)(e)(9).
 

 Progressive finally argued that the plain language of section 627.736(4)(b) allows it to raise the defective D & A form at any time, even after a payment of the claim. Preziosi responded that Progressive was given proper and sufficient notice and that Progressive waived its right to argue that the D & A form was defective because it did not raise the deficiency in any of its EOB’s or in its pre-suit response and because it had, in fact, partially paid the bills.
 

 The county court entered a summary judgment in favor of Progressive. Pre-ziosi appealed to the circuit court and a one-judge appellate “panel” reversed, adopting the reasoning in the widely-cited but unpublished opinion of Duval County Judge Arias in the case of
 
 Lowery v. Progressive Select Ins. Co.,
 
 No. 16-2007-SC-6332 (Fla. Duval Cty. Ct. July 8, 2008).
 

 In the second case, Petitioner, Florida Medical & Injury Center, Inc. [“FMIC”], as assignee of Adrian Escobeda [“Escobe-da”], seeks certiorari review of an opinion of the circuit court, issued in its appellate capacity, which affirmed a county court’s entry of a summary judgment in favor of the Progressive Express Insurance Company. In the order under review, the circuit court upheld the county court’s determination that FMIC failed to provide Progressive with a proper D & A form as required by section 627.736(5)(e)l., Florida Statutes, and thus FMIC’s PIP claim was barred.
 

 FMIC had provided medical services to Escobeda for injuries he sustained in an automobile accident on January 28, 2005. On February 22, 2005, Progressive received a standard D & A form from FMIC, as assignee of Escobeda’s benefits. The “blank” in this D & A form, intended to be used to list services rendered, was not filled in by FMIC, but the records were attached.
 

 On May 9, 2005, Progressive sent FMIC an “Explanation of Benefits” (“EOB”), reimbursing FMIC for the submitted bills at a reduced rate. It did not reference the D & A form. On September 27, 2005, FMIC sent a pre-suit demand letter, pursuant to section 627.736(11), Florida Statutes, to Progressive seeking the unpaid portion of the submitted medical bills. Progressive refused. On June 16, 2006, FMIC filed a complaint in the county court in Seminole County against Progressive seeking PIP
 
 *336
 
 reimbursement in the amount of $340.18 for services rendered on March 5 and 23 and April 6 and 13, 2006.
 
 [3]
 
 Progressive filed an answer and affirmative defenses which included,
 
 inter alia,
 
 an affirmative defense that FMIC’s D & A form failed to comply with the requirements of section 627.736(5)(e), Florida Statutes, because it was not properly completed.
 

 Progressive then filed a motion for summary final judgment, asserting that the D & A form provided to Progressive by FMIC failed to satisfy the requirements of section 627.736(5)(e)5., Florida Statutes (2005), because FMIC failed to list the services rendered to Escobeda at the initial visit. Progressive asserted that because FMIC failed to comply with the statutory D & A requirements, Progressive was entitled to judgment as to all dates of service.
 

 FMIC responded to the motion for summary judgment, acknowledging that it left line 1. blank, but argued that, even though the information on services rendered was missing in the standard D & A form, it had supplied complete documentation supporting the claim and Progressive had paid for the services rendered (at a reduced rate), without objecting to the adequacy of the form, and therefore, Progressive could not claim that FMIC was barred from recovery because of alleged non-compliance with the statutory D & A form requirements. FMIC also argued that completion in full of the standard D & A form was not required under section 627.736(5)(e), Florida Statutes (2005). Finally, FMIC argued that it was not seeking payment for the initial treatment and, therefore, the D & A requirement did not apply. FMIC pointed out that the standard D & A form only applies to the initial treatment.
 

 The county court entered an order granting summary final judgment in favor of Progressive, concluding that the D & A form sent by FMIG violated the requirements of section 627.736(5)(e)5., Florida Statutes (2005), because it failed to list on the face of the form services provided, and, therefore, Progressive was relieved of the duty to pay.
 

 FMIC appealed the county court’s decision to the circuit court. On appeal, FMIC argued:
 

 1. FMIC “substantially complied” with the statute, because the D & A form was signed and dated and Progressive had been provided the documentation of Es-cobeda’s medical bills.
 

 2. Progressive waived any defense as to lack of notice by partially paying the bills at issue and should be estopped from raising the D & A form defense.
 

 3. Even if the D & A form was insufficient, the statute does not provide a remedy if the form is not completed properly and there is no mechanism permitting a forfeiture or denial of coverage on this basis.
 

 4. The statutory requirements governing the D & A form only apply to the initial treatment.
 

 5. Progressive has a duty of good faith and should not be allowed to deny coverage based on a “technical glitch.”
 

 Progressive filed an answer brief in which it argued that the trial court properly entered summary judgment in its favor because:
 

 1. Under the plain and unambiguous language of section 627.736(5)(e), Florida Statutes, FMIC was required to submit a properly completed D
 
 &
 
 A form as a condition precedent to filing suit.
 

 
 *337
 
 2. The D & A form submitted was not properly completed and did not substantially comply with the statute.
 

 3. Progressive did not waive its right to allege the non-compliance with the statutory requirement.
 

 The circuit court, in its appellate capacity, issued an opinion affirming the county court’s summary judgment order. The circuit court held that the requirement of a D & A form under section 627.736, Florida Statutes, is a condition precedent to an action in court. The court held that waiver and estoppel and whether the first date is the only date affected are irrelevant to the condition being met; any recovery is precluded.
 

 The Statute
 

 Florida’s PIP statute has, from its inception, been a complicated piece of legislation, but the successive years of constant amendment and revision have both added to its complexity and detracted from its clarity. This is what has given rise to the widely divergent views of this issue. To understand, it is essential to be familiar with the relevant portions of both subsection (5), quoted above, and subsection (4) of 627.736. Subsection (4) provides, in pertinent part, as follows:
 

 627.736 Required personal injury protection benefits; exclusions; priority;
 
 claims.—
 

 [[Image here]]
 

 (4)(b) Personal injury protection insurance benefits paid pursuant to this section shall be overdue if not paid within 30 days after the insurer is furnished
 
 written notice of the fact of a covered loss and of the amount of same.
 
 If such written notice is not furnished to the insurer as to the entire claim, any partial amount supported by written notice is overdue if not paid within 30 days after such written notice is furnished to the insurer ... when an insurer pays only a portion of a claim or rejects a claim, the insurer shall provide at the time of the partial payment or rejection an itemized specification of each item that the insurer had reduced, omitted or declined to pay and any information that the insurer desires the claimant to consider related to the medical necessity of the denied treatment or to explain the reasonableness of the reduced charge....
 

 This paragraph does not preclude or limit the ability of the insurer to assert that the claim was
 
 unrelated, was not medically necessary, or was unreasonable or that the amount of the charge ivas in excess of that permitted under, or in violation of subsection (5).
 
 Such assertion by the insurer may be
 
 made at any time, including after payment of the claim
 
 or after the 30 day time period for payment set forth in this paragraph.
 

 (Emphasis added.) Progressive contends that the subsection 4(b) requirement of
 
 “written notice of the fact of a covered loss
 
 and the amount of the same,” includes the D & A form.
 

 We are not persuaded by Progressive’s argument that submission of an incomplete D & A form is the equivalent of no written notice of a claim. The statute does not define “written notice of a covered loss and the amount of the same,” nor does it connect the D & A form to notice. The 4(b) requirement of notice and the 5(e) requirement of a D & A form are two distinct statutory duties. Before addition of the D
 
 &
 
 A form in 2003, the documentation provided by insureds was plenty sufficient to constitute “notice” of the claim. Depending on what is missing, even an incomplete D & A form could provide written notice of a claim. The documenting of treatment by attaching records to the D & A form, rather than listing treatments on
 
 *338
 
 the face of the form, is ample notice of the fact and amount of the loss under 4(b), even if it does not satisfy (5)(e).
 
 [4]
 
 Progressive's argument that an incomplete D & A form does not provide written notice of a claim is also belied by payment, without protest, of the bills at issue.
 
 [5]
 

 Progressive’s theory that a D & A form is an essential component of notice rests mainly on subsection' (5)(e)5., which states that the “original completed disclosure and acknowledgement form
 
 shall
 
 be furnished to the insurer pursuant to paragraph (4)(b)....” (Emphasis added). Progressive reasons that since the statute states that the completed D & A form “shall” be furnished to the insurer, PIP benefits cannot be overdue in the absence of the submission of a properly completed D & A form. Moreover, the phrase “pursuant to paragraph (4)(b)” is intended to make the D & A form a component of notice since 4(b) is where the notice requirement is found. This argument, however, ignores the remainder of 5(e):
 

 The original completed disclosure and acknowledgement form shall be furnished to the insurer pursuant to paragraph (4)(b)
 
 and may not be electronically furnished.
 

 § 627.736(5)(e)5., Fla. Stat. (2005) (emphasis added). This language suggests that subparagraph (5)(e)5. refers to the method of delivery of the D & A
 
 form,
 
 i.e., the original must be supplied to the insurer by mail and electronic transmission is not allowed. “Pursuant to paragraph (4)(b)” refers to the manner of furnishing, not what is furnished.
 

 There is no language in paragraph (5)(e) that even suggests that failure to provide the properly completed form to the insurer is failure to provide “notice of the covered loss” to the insurer, or that such failure will render the provider’s bills not payable. If the Legislature had intended this result, it could have said so. We are not at liberty to re-write the statute.
 
 Seagrave v. State,
 
 802 So.2d 281, 287 (Fla.2001).
 

 Several circuit courts have held that a D <& A form is not the “written notice” contemplated by subsection (4)(b),
 
 see Theodore P. Vlahos, Inc. v. USAA Cas. Ins. Co.,
 
 No. 07-11984-SC-44 (Fla. 6th Cir.Ct. July 9, 2008), and recently, the Third District Court of Appeal in
 
 United Automobile Insurance Co. v. Professional Medical Group, Inc.,
 
 26 So.3d 21 (Fla. 3d DCA 2009),
 
 made
 
 short work
 
 of
 
 this contention:
 

 United argues that in order for it to have received notice of a covered loss, the initial and timely set of bills must include the D and A form as described in section 627.736(5)(e), and that this omission cannot be cured prior to litigation. We find both arguments to be without merit.
 

 Id.
 
 at 23.
 

 Progressive also assei'ts that the failure to correctly complete and deliver
 
 *339
 
 the initial D
 
 &
 
 A form precludes any further claims. According to Progressive, an incomplete D & A form is the equivalent of a failure to provide the written notice of a covered loss because subsection (5)(e)9. provides that, for subsequent treatments or services, the provider must maintain a patient log signed by the patient in chronological order by the date of service
 
 that is consistent with the services being rendered to the -patient as claimed.
 
 Progressive reasons that if there are no services set forth on the original D & A form then, even if a patient log is maintained, it would not reflect treatment consistent with the services being rendered “as claimed” because no services were ever effectively claimed. Progressive suggests that if the original D & A form does not set forth the services rendered on the form, there is “no way to establish that any subsequent treatment is consistent with those ‘claimed services.’ ” Progressive argues that if the only consequence of not having submitted a proper D & A form is that the provider is not entitled to be paid for the
 
 initial
 
 date of service, but is entitled to be paid for subsequent dates of service, the purpose of requiring the D & A form is defeated.
 

 Contrary to the insurers’ position, applying the statute as written does not “defeat the entire purpose of requiring a D & A form.” A key purpose of requiring a D & A form is to insure that the medical provider has explained and rendered the services to the patient. The patient is required to sign the form attesting to the facts that the services were indeed performed, that the medical provider explained the services, that the insured was not solicited to seek services by the provider and that the patient is aware that he is entitled to a percentage of a reduction in benefits paid by the insurer if there is a billing error by the provider.
 
 See
 
 § 627.736(5)(e)l.a-e, Fla. Stat. (2005). The D & A form is to protect the patient as well as the insurance company, and the insured is not benefitted if the insurer is relieved of the duty to pay a legitimate charge the insured has incurred for treatment.
 
 [6]
 

 Neither the statute itself nor controlling case law supports Progressive’s interpretation of the consequence of submitting an incomplete D & A form. If the Legislature intended to require a complete D & A form as a condition precedent to the payment of all medical bills, the statute would have explicitly said so. The Florida Legislature included the tolling provisions in section 627.736 to allow an insurer to receive properly computed statements and bills irom which to make an informed decision to pay, as well as to allow the medical providers an opportunity to correct any mistakes in those billings. § 627.736(4)(b), Fla. Stat. (2008). The intent of the statute, which was to prevent fraud by having verifiable documentation that the services were actually performed and that the patient was advised as to the nature of the services, can be fulfilled even by an incomplete D & A form that is signed by the patient. Under (4)(b), a defect in a submitted claim has to be brought to the provider’s attention by the insurer so it can be rectified. Here, the insurers never notified the insureds in an EOB or by any other means, that the D & A form was insufficient for payment and, instead, partly paid the claims.
 

 
 *340
 
 This brings us to Progressive’s contention that it does not waive its right to raise the incomplete D & A as a defense, even if it pays the claim, because it can raise the incomplete D & A as a defense at any time. This argument hinges on the interpretation of the phrase, “or in violation of,” contained in the very last sentence of subsection 4(b):
 

 This paragraph does not preclude or limit the ability of the insurer to assert that the claim was unrelated, was not medically necessary, or was unreasonable or that the amount of the charge was in excess of that permitted under, or in violation of, subsection (5). Such assertion by the insurer may be made at any time, including after payment of the claim or after the 30 day time period for payments set forth in this paragraph.
 

 According to Progressive, this provision would allow it to raise at any time that the claim was “in violation of subsection (5)” because a “completed” D & A form is one of the requirements of subsection (5).
 

 The previously cited
 
 Lowery
 
 opinion of the Duval County Court at some length refuted this argument using a grammatical analysis of the language of the statute, applying the rules of statutory construction and reading subsection (4)(b) in pari materia with the remainder of the statute. The
 
 Lowery
 
 court concluded, and we agree, that this sentence does not allow the insurer unlimited time to assert that the claim was generally in violation of subsection (5); rather, this provision is limited to a claim that “the amount of the charge was in excess of that permitted” in subsection 5.
 

 This understanding makes sense in light of the other provisions of subsection (5). Subsection (5) contains a number of limitations and express prohibitions on charges that may be made. For example, subsection (5)(b)2. sets limits on charges for certain thermograms, ultrasounds and other tests; subsection (5)(b)3. sets limits on charges for certain nerve conduction tests; subsection (5)(b)5. limits the amount of charges on MRI’s. The very first paragraph of subsection (5), subsection (5)(a), states that a provider cannot charge an amount in excess of the amount customarily charged for like services. The provision at issue in section 627.736(4)(b) is meant to allow the insurer at any time to dispute a bill that exceeds the amounts permitted to be charged in subsection (5). It does not allow an insurer unlimited time to make the global assertion that the D & A form was filled out incorrectly.
 

 This understanding also makes sense given the preceding part of that same sentence in subsection (4)(b). The beginning of that sentence lists the claims that may be made at any time, even after payment. They are that the claim was “unrelated,” “not medically necessary” or “unreasonable.” Again, as noted by the
 
 Lowery
 
 court:
 

 If the Legislature intended for subsection (4)(b) to say what Defendant reads it to say, the Legislature could simply have done that by allowing the assertion of “all claims or charges which violate subsection (5)” rather than describing the four types of assertions that can be raised or that the ‘amount of the charge was in excess of that permitted under, or in violation of subsection (5).’ That is, if an ‘amount of the charge was in excess’ of those permitted by subsection (5), it would then necessarily have been a “claim” made “in violation of subsection (5)” There would have been no need to include the limitation that the charges be “in excess” at all.
 

 It is worth remembering that, in enacting the no-fault law, the Legislature expressed that the purpose of the PIP statute is to provide for medical, surgical,
 
 *341
 
 funeral and disability insurance benefits without regard to fault,
 
 [7]
 
 and the Florida Supreme Court has characterized it as a near guarantee of “swift and virtually automatic payment”
 
 [8]
 
 of reasonable and necessary medical, disability and funeral benefits to or on behalf of persons injured or killed in motor vehicle accidents. Florida’s no-fault laws are construed liberally in favor of the insured.
 
 See United Auto. Ins. Co. v. Viles,
 
 726 So.2d 320 (Fla. 3d DCA 1998).
 

 Even if the insurers’ theory about “notice” were to prevail, when an insurer receives a claim and the provider’s D & A form is deemed deficient for some reason, the insurer can either pay or refuse to pay on the ground that proof without the proper D & A form is not notice. If the insurer fails to specify the defect in the form so that it can be rectified as contemplated by subsection (4), it will be deemed to have waived its objection to payment. There may be other measures that the insurer could take to obtain the form but once the insurer pays, it will not be heard to refuse payment because of a defect in the form. In
 
 Lake Worth Emergency Chiropractic,
 
 15 Fla. Supp. 1227a (Fla. 17th Jud.Cir.2008), the court pointed out that subsection (4)(b) requires an insurer to notify a claimant if it considers providers’ submissions to be incomplete or defective and held that failure to do so and to afford the claimant an opportunity to correct any asserted defect estops the insurer from asserting any defect in the D & A form as a defense to payment.
 
 See also United Auto. Ins. Co. v. Amador,
 
 15 Fla. Supp. 320a (Fla. 11th Cir.Ct.2008).
 

 Finally, there is Progressive’s contention that compliance by the provider with section 627.736(5)(e) is a condition precedent to the right of the provider to access the courts to recover a claim unpaid by the insurer. Though not a component of “notice,” the providers indisputably do have the statutory duty to provide the original D & A form to the insurer. The PIP statute does not specify, however, any remedy for failure to correctly complete the form or even for the complete failure to furnish the insurer with this form. The question then becomes: “What is the consequence for failing to comply?” Progressive contends that if the courts fail to find that the remedy for the submission of a flawed D & A form is that the claim cannot be enforced by the courts, the duty “would be rendered meaningless.” First, the Florida statutes are filled with duties and requirements unaccompanied by penalties or consequences for noncompliance. The courts are not at liberty to manufacture one.
 

 Second, nothing in the statute suggests that the submission of a flawless D & A form is a condition to the right to enforce a claim to payment. The Florida Legislature certainly knows how to create a condition precedent. Subsection (11) of the same statute expressly says: “As a condition precedent to filing any action for benefits under this section, the insurer must be provided with written notice of an intent to initiate litigation.” Finally, as the Third District Court in its recent
 
 United Automobile
 
 opinion
 
 [9]
 
 observed, even if submission of the D & A form were a component of notice, the provider can certainly cure a defect in the completion of the form and submit it at any time before filing suit.
 

 We deny Progressive American’s petition for certiorari in Case No. 09-889. We
 
 *342
 
 grant the petition of Florida Medical & Injury Center in Case No. 08-4005, quash the decision of the appellate panel and remand for disposition consistent with this opinion.
 

 TORPY and COHEN, JJ., concur.
 

 [1]
 

 .
 
 Pathway Wellness & Chiropractic Clinic, P.A. v. USAA Cas. Ins. Co.,
 
 16 Fla. Supp. 433b (Fla.2d Cir.Ct.2009);
 
 Lake Worth Emergency Chiropractic Ctr., P.A. v. Progressive Am. Ins. Co.,
 
 15 Fla. Supp. 1227a (Fla. 17th Cir.Ct. 2008);
 
 King v. United Auto. Ins. Co.,
 
 15 Fla. Supp. 430a (Fla. 11th Cir.Ct.2008);
 
 United Auto. Ins. Co. v. Amador,
 
 15 Fla. Supp. 320a (Fla. 11th Cir.Ct.2008);
 
 Millennium Diagnostic Imaging Center, Inc. v. United Auto. Ins. Co.,
 
 15 Fla. Supp. 180a (Fla. 11th Cir.Ct. 2007);
 
 Preziosi West/East Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.,
 
 14 Fla. Supp. 789a (Fla. 18th Cir.Ct.2007);
 
 North Fla. Med. Clinic v. Progressive Select Ins. Co.,
 
 14 Fla. Supp. 689b (Fla. Duval Cty. Ct. May 1, 2007);
 
 Janowski v. Progressive Select Ins. Co.,
 
 14 Fla. Supp. 505a (Fla. Duval Cty. Ct. Mar. 8, 2007);
 
 Martin v. Progressive Pro Auto Ins. Co.,
 
 14 Fla. Supp. 394a (Fla. Duval Cty. Ct. Feb. 2, 2007);
 
 Eric G. Friedman, D.C., P.A. v. United Auto. Ins. Co.,
 
 13 Fla. Supp. 825a (Fla. 11th Cir.Ct. 2006);
 
 NW Broward Orthopaedic Assocs., P.A.
 
 v.
 
 United Auto. Ins. Co.,
 
 13 Fla. Supp. 740a (Fla. 17th Cir.Cl.2006);
 
 Weiss v. Progressive Express Ins. Co.,
 
 13 Fla. Supp. 395a (Fla. 18th Cir.Ct.2006);
 
 Ft. Lauderdale Pain Center, Inc. v. Allstate Ins. Co.,
 
 13 Fla. Supp. 1006a (Fla. Dade Cty. Ct. July 17, 2006);
 
 Hialeah Diagnostic, Inc. v. United Auto. Ins. Co.,
 
 No. 05-3692-CC-23(04) (Fla. Dade Cty. Ct. Oct. 20, 2006);
 
 Juan Garcia v. UAIC,
 
 No. 05-1671-SP-24 (Fla. Dade Cty. Ct. Sept. 12, 2006);
 
 Professional Med. Group, Inc. v. United Auto. Ins. Co.,
 
 No. 05-015912-CC-25 (Fla. Dade Cty. Ct. July 11, 2006);
 
 Integra Health Servs., Inc. v. United Auto. Ins. Co.,
 
 No. 05-5274-CC-23(02) (Fla. Dade Cty. Ct. May 11, 2006);
 
 Cereceda + Assocs., M.D., P.A. v. United Auto. Ins. Co.,
 
 No. 05-05280-CC-23(03) (Fla. Dade Cty. Ct. Jan. 25, 2006);
 
 Polina-Nosel, M.D., P.A. v. United Auto. Ins. Co.,
 
 12 Fla. Supp. 1190 (Fla. Broward Cty. Ct.2005);
 
 Asclepius Med. Inc. v. U.S. Sec. Ins. Co.,
 
 12 Fla. Supp. 778b (Fla. Dade Cty. Ct. May 27, 2005);
 
 Health Source Chiropractic, Inc. v. USAA Cas.
 
 
 *332
 

 Ins. Co.,
 
 No. 08-10834CO-54 (Fla. 6th Cir.Ct. Oct. 12, 2009);
 
 Rainforest Rehab., Inc. v. United Auto. Ins. Co.,
 
 No. 08-16272 COCE 50 (Fla. 17th Cir.Ct. May 8, 2009);
 
 Preziosi West/East Chiropractic Clinic, P.A. v. Progressive Express Ins. Co.,
 
 No. 07-52-AP (Fla. 18th Cir.Ct. Jan. 15, 2009);
 
 United Auto. Ins. Co. v. Brown,
 
 No. 07-11616CACE (Fla. 17th Cir.Ct. July 24, 2008);
 
 Theodore P. Vlahos, Inc. v. USAA Cas. Ins. Co.,
 
 No. 07-11984-SC-44 (Fla. 6th Cir.Ct. July 9, 2008);
 
 Preferred Medical & Rehab, Inc. v. Progressive Select Ins. Co.,
 
 No. 07-27349 (Fla. Dade Cty. Ct. Aug. 20, 2008);
 
 Grossman v. United Auto. Ins. Co.,
 
 No. 07-13714(01) (Fla. Dade Cty. Ct. July 17, 2008);
 
 Lowery v. Progressive Select Ins. Co.,
 
 No. 16-2007-SC-6332 (Fla. Duval Cty. Ct. July 8, 2008);
 
 Kendall South Med. Center v. United Auto. Ins. Co.,
 
 No. 06-6662 SP 26(02) (Fla. 11th Cir.Ct. Oct. 23, 2007);
 
 Orthopaedic Clinic v. Progressive Auto Pro Ins. Co.,
 
 No. 05-SC-2783 (Fla. Seminole Cty. Ct. May 7, 2007);
 
 Advance Health Serv’s., III, Inc. v. United Auto. Ins. Co.,
 
 No. 05-3715 CC 26(03) (Fla. 11th Cir.Ct. Oct. 12, 2006);
 
 Clark v. Progressive Express Ins. Co.,
 
 No. 16-2006-SC-004375 (Fla. Duval Cty. Ct. Dec. 20, 2006);
 
 Bayou Chiropractic Center, P.A. v. USAA,
 
 No.2007SC-007154 (Fla. Escambia Cty. Ct. Mar. 13, 2008);
 
 Bayou Chiropractic Center, P.A., v. USAA,
 
 No. 2007-SC-007155 (Fla. Escambia Cty. Ct. Mar. 13, 2008).
 

 [2]
 

 . Indeed, in several of the previously cited cases, the insurer’s position has been that it is entitled to recoup benefits "erroneously” paid out.
 

 [3]
 

 . The year appears to be incorrect and should have been “2005.’'
 

 [4]
 

 . We are in agreement with Progressive that attaching records of treatment without describing them on the face of the D & A form is not substantial compliance with this subsection. Subsection (5)(e)l.a. speaks of "sendees set forth therein,” i.e. in the form. Given that the purpose of the form is to inform the participant and deter fraud, the use of attachments to an incomplete form fails the statutory requirement.
 

 [5]
 

 . Other circuit courts have held that payment of a claim, even at a reduced rate, demonstrates that an insurer received wrilten notice of a claim and precludes an argument (hat an incomplete D & A form does not provide the written notice contemplated by subsection 4(b).
 
 Weiss v. Progressive Express Ins. Co.,
 
 13 Fla. Supp. 395a (Fla. 18th Cir.Ct.2006);
 
 but see, North Fla. Med. Clinic
 
 v.
 
 Progressive Select Ins. Co.,
 
 14 Fla. Supp. 689b (Fla. Duval Cty. Ct. May 1, 2007);
 
 Ft. Lauderdale Pain Ctr., Inc. v. Allstate Ins. Co.,
 
 13 Fla. Supp. 1006a (Fla. Dade Cty. Ct. July 17, 2006).
 

 [6]
 

 . At the county court level, some judges have concluded that the insurer is relieved of the duty of payment by section 627.736(5)(c)l., but that section plainly speaks of the "statement of charges.” It is impossible to fold the D & A form identified in (5)(e) into the statement of charges. The “Notice of Initiation of Treatment” referenced in (5)(c)I. is actually more akin to the D & A form.
 

 [7]
 

 .
 
 See
 
 § 627.731, Fla. Stat. (2008).
 

 [8]
 

 .
 
 Ivey v. Allstate Ins. Co.,
 
 774 So.2d 679, 683-84 (Fla.2000).
 

 [9]
 

 .United Auto. Ins. Co. v. Prof'l Med. Group, Inc.,
 
 26 So.3d 21.