SAWAYA, J.
Patrick Macchione is a deeply disturbed individual who suffers from “severe” mental illness. This may explain, but does not excuse (mental competence is not an issue), his obsession with the victim and his threats to take the victim’s life. Macchione comes to this court with an array of convictions that include sixteen violations of repeat violence injunction and one conviction each for aggravated stalking after an injunction, aggravated stalking with a credible threat, and violation of section 836.10, Florida Statutes (2009), which makes it a crime if a person “writes or composes and also sends or procures the sending of any letter or inscribed communication ... to any person, containing a threat to kill or do bodily injury to the person to whom such letter or communication is sent_” § 836.10, Fla. Stat. (2009).[1] Of these convictions, Macchione challenges only the latter, contending that the trial court committed reversible error in denying his motion to dismiss that charge. The question presented is whether, as Macchione contended in his motion and contends in this appeal, the threatening electronic communications in the form of Twitter postings and YouTube videos were not prohibited by section 836.10 when he composed and transmitted them in 2009.
These convictions are the result of a plea Macchione entered.[2] He reserved the right to appeal the denial of the motion to dismiss he had previously filed. The court found, and the State agreed, that the motion is dispositive of the charge alleging violation of section 836.10, and hence this appeal. The facts and circumstances surrounding the commission of this offense are not particularly helpful to the resolution of the issue before us. It is enough simply to say that the threats to harm and kill the victim were contained in YouTube videos and Twitter postings and that all of the charged communications were stipulated by the State to be electronic communications composed and transmitted in 2009.
The significance of the stipulated facts lies in the historical development of section 836.10. The statute was enacted in 1913 and provided that it was a criminal offense “if any person write or compose and also send or procure the sending of any letter or inscribed communication ... to any person, containing a threat to kill or to do bodily injury to the person to whom such letter or communication is sent....” Ch. 6503, Laws of Fla. (1913). The statute has been amended four times since its original enactment, but the first three amendments (the third amendment occurred in 1971) virtually left unchanged the pertinent pro *116 visions we are concerned with. The fourth amendment, expressly made effective October 1, 2010, did significantly amend the statute by incorporating the following changes (strike through means deletion, underline means addition):
If Any person who writes or composes and also sends or procures the sending of any letter, or inscribed communication, or electronic communication, so written-or composed, whether such letter or communication be signed or anonymous, to any person, containing a threat to kill or to do bodily injury to the person to whom such letter or communication is sent, or a threat to kill or do bodily injury to any member of the family of the person to whom such letter or communication is sent commits, the person-so writing or composing and so sending or procuring-the- sending- of-saeh letter "OF communication7 shall be guilty of a felony of the second degree punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
Ch.2010-51, § 1, at 381, Laws of Fla. Macchione contends that this amendment constitutes a substantive change by including the prohibition against sending a threatening “electronic communication.” Because it is a substantive change as opposed to a clarification, Macchione further contends that the 2009 version of the statute that he was charged with violating does not make his electronic communications (Twitter postings and YouTube videos) a criminal offense. He cannot be convicted under the 2010 amendment, he argues, because that would constitute a violation of the constitutional protection against ex post facto laws. The State takes the opposite view, contending that the 2010 amendment to section 836.10 clarified that electronic communications were intended all along by the Legislature to fall within the meaning of the statutory provisions enacted in the 1913 era and therefore no ex post facto violation occurred.
The prohibition against ex post facto laws is found in both the United States and Florida constitutions. U.S. Const, art. I, § 10; art. I, § 10, Fla. Const. This constitutional proscription “forbids the enactment of ‘laws with certain retroactive effects,’” Shenfeld v. State, 44 So.3d 96, 100 (Fla.2010) (quoting Stogner v. California, 539 U.S. 607, 610, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003)), that fall into four general categories recognized by the courts as providing an authoritative guide governing the evaluation of all ex post facto claims. Shenfeld; Stogner. Of these categories, the first one, categorizing as an improper ex post facto law “[ejvery law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action,” is applicable here. Shenfeld, 44 So.3d at 100 (quoting Stogner, 539 U.S. at 612, 123 S.Ct. 2446, which adopted the four categories listed in Colder v. Bull, 3 U.S. 386, 3 Dall. 386, 1 L.Ed. 648 (1798)); see also Collins v. Youngblood, 497 U.S. 37, 46, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). Clarifying amendments are generally not considered substantive enactments because they usually do not make acts criminal that were not previously declared criminal or increase the punishment for offenders. Rather, such amendments are understood as clarifying or explaining the legislative intent that animated enactment of the original statute, and usually do not fit within the parameters of any accepted category of ex post facto law. See State v. Nuckolls, 606 So.2d 1205, 1207 (Fla. 5th DCA 1992). If the 2010 amendment is a clarification of the statute as originally enacted in 1913, as the State contends, Mac-chione’s conviction must be affirmed.
There are factors the courts apply when determining whether a statutory *117 amendment is a clarification of existing law that may be applied retroactively. They include: whether the amendment responds to a recent controversy; the span of time between enactment of the original statute and the amendment; and the contents of the title of the bill containing the amendment. Each will be discussed seriatim.
“When ... an amendment to a statute is enacted soon after controversies as to the interpretation of the original act arise, a court may consider that amendment as a legislative interpretation of the original law and not as a substantive change thereof.” Lowry v. Parole & Prob. Comm’n, 473 So.2d 1248, 1250 (Fla.1985) (citations omitted); see Foster v. State, 861 So.2d 434, 439 (Fla. 1st DCA 2002); Matthews v. State, 760 So.2d 1148, 1150 (Fla. 5th DCA 2000); State v. Sedia, 614 So.2d 533, 535 (Fla. 4th DCA 1993). Our canvass of the pertinent case law revealed no reported decision applying the pre-amendment version of section 886.10 to electronic communications, so we see no controversy created by the courts. We also do not see anything the State has submitted that would suggest a controversy was brewing elsewhere that would prompt the Legislature to enact the amendment.
The span of time between the enactment of the statute and its amendment, see Parole Commission v. Cooper, 701 So.2d 543, 544-45 (Fla.1997), and State Farm Mutual Automobile Insurance Co. v. Laforet, 658 So.2d 55, 62 (Fla.1995), is a factor that bodes particularly well for Macchione’s position that the amendment is not a clarification. In Cooper, the court held that “it is inappropriate to use an amendment enacted ten years after the original enactment to clarify original legislative intent,” 701 So.2d at 544-45, and in Laforet, the court held that “[i]t would be absurd ... to consider legislation enacted more than ten years after the original act as a clarification of original intent_” 658 So.2d at 62. Here, the pertinent provisions of the statute virtually remained unchanged from the time of its enactment in 1913 until October 1, 2010, and this span of 97 years exceeds more than nine times the ten-year period applied in Cooper and Laforet. And the span of time between the prior amendment in 1971 (which did not alter the pertinent provisions of the statute) and the 2010 amendment is almost three times the ten-year period. See Ramcharitar v. Derosins, 35 So.3d 94, 99 (Fla. 3d DCA 2010) (reversing an order finding the amendment was a clarification; concluding that “the 2003 revision to section 440.10 occurred twenty years after the Court decided Abernathy and some twenty-nine years after the 1974 amendment to section 440.10. As was held by the Court in similar circumstances, given that the membership between the 1974 and 2003 Legislatures was substantially different, it would be absurd to consider the 2003 revision as a clarification of the Legislature’s original intent in 1974 ....”); see also M.W. v. Davis, 756 So.2d 90, 103 n. 26 (Fla.2000) (“Due to the gap between when the language was originally placed in the statute and the most recent amendment, the 1999 amendment cannot be seen as clarifying the Legislature’s intent in 1986 .... “ (citation omitted)).
The courts also look to the title of the bill where legislative intent is often revealed to see if the Legislature made any indication that the amendment was intended to be a clarification of the statute. See Earth Trades, Inc. v. T & G Corp., 108 So.3d 580, 585 (Fla.2013) (“In the title of the 2003 session law amending section 489.128, the Legislature stated that its intent was to ‘clarify! ] that the prohibition on enforcement of construction contracts extends only to enforcement by the unlicensed contractor.’ Ch.2003-257, at 1290, *118 Laws of Fla.”); see also Kasischke v. State, 991 So.2d 808, 809 (Fla.2008) (“We certainly agree that the bill title may be helpful in determining legislative intent.” (citation omitted)); State v. Webb, 398 So.2d 820, 825 (Fla.1981) (“The title is more than an index to what the section is about or has reference to; it is a direct statement by the legislature of its intent.” (citation omitted)). The title to the bill enacting the amendment to the statute at issue here provides:
An act relating to threats; amending s. 836.10, F.S.; revising provisions relating to the sending of or procuring the sending of letters or inscribed communications containing certain threats of death or bodily injury; including electronic communications in provisions; providing an effective date.
Ch.2010-51, § 1, at 381, Laws of Fla. In Hassen v. State Farm Mutual Automobile Insurance Co., 674 So.2d 106 (Fla.1996), the Florida Supreme Court, conducting an analysis of a similar title, stated:
[T]he conclusion that the amendment at issue here was intended to be a substantive rather than a remedial change in the law is further supported by the title to chapter 92-318, which reads in pertinent part “[a]n act relating to insurance; ... amending s. 627.727, F.S.; ... revising provisions with respect to subro-gation rights of underinsured motorist insurers.” Ch. 92-318, at 3081-84, Laws of Fla. Parker v. State, 406 So.2d 1089, 1092 (Fla.1981) (recognizing that title of enacting legislation is one indicator of legislative intent).
Hassen, 674 So.2d at 109-10.
We believe the title clearly indicates that the Legislature intended to make a substantive change to be applied prospectively as opposed to a retroactive clarification. The title specifically provides that the amendment is “including electronic communications” as a separate category theretofore never included in the prohibitions of the statute. Ch.2010-51, § 1, at 381, Laws of Fla. Now the amended statute lists three alternative prohibitions, “letter, inscribed communication, or electronic communication” that may form the basis of a criminal prosecution, whereas before there were only two. Compare § 836.10, Fla. Stat. (2009), with § 836.10, Fla. Stat. (2010).
The title also states that an effective date is provided, October 1, 2010, which is well after the date Macchione sent the electronic communications. Ch.2010-51, §§ 1-2, Laws of Fla. When the Legislature provides an effective date for an amendment, it effectively rebuts any argument that the amendment is to be applied retroactively. State Dep’t of Revenue v. Zuckerman-Vernon Corp., 354 So.2d 353, 358 (Fla.1977); Ramcharitar, 35 So.3d at 98; Promontory Enters., Inc. v. S. Eng’g & Contracting, Inc., 864 So.2d 479, 484 (Fla. 5th DCA 2004); Middlebrooks v. Dep’t of State, Div. of Licensing, 565 So.2d 727, 728-29 (Fla. 1st DCA 1990).
Macchione relies on the staff analysis to show that the Legislature’s intent was to enact a substantive amendment to be applied prospectively. A shroud of uncertainty has been placed over the use of staff analyses by statements made by the Florida Supreme Court indicating that “ ‘[t]his Court is not unified in its view of the use of legislative staff analyses to determine legislative intent,’ ” Kasischke, 991 So.2d at 810 (quoting GTC, Inc. v. Edgar, 967 So.2d 781, 789 n. 4 (Fla.2007)), and that “even if staff analyses may sometimes help in determining legislative intent, and even if we could expect defendants to review them to determine what conduct was permitted, the Staff Analysis here fails to clarify the Legislature’s intent.” Kasischke, 991 So.2d at 811. But unlike the *119 staff analysis in Kasisehke, the reports we have reviewed do clearly support Mac-chione’s contention that a substantive change was intended by the Legislature when it enacted the amendment. In any event, we note that we did not need to rely on those reports to arrive at our conclusion. We simply note them here because they are supportive of that conclusion.
Perhaps sensing the eventual demise of its clarification argument, the State has débuted a new argument, which it now promotes as the main attraction. For the first time in its brief (the State did not make this argument to the trial court), the State contends that the amendment is immaterial because the Twitter postings and YouTube videos fall under the purview of the statute as originally written in 1913. This argument parrots the reasoning utilized by the trial court in denying Mac-chione’s motion, which characterized the amendment as “unnecessary.” We reject this argument and the trial court’s reasoning because they necessarily strip the amendment of any meaning and render it a collection of useless words enacted for no purpose. “It is a basic rule of statutory construction that ‘the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless.’” Dennis v. State, 51 So.3d 456, 463 (Fla.2010) (quoting Martinez v. State, 981 So.2d 449, 452 (Fla.2008) (other citation omitted)); State v. Goode, 830 So.2d 817, 824 (Fla.2002); Unruh v. State, 669 So.2d 242, 245 (Fla.1996) (“As a fundamental rule of statutory construction, ‘courts should avoid readings that would render part of a statute meaningless.’” (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 456 (Fla.1992))); Sharer v. Hotel Corp. of Am., 144 So.2d 813, 817 (Fla.1962) (“It should never be presumed that the legislature intended to enact purposeless and therefore useless, legislation.”); Quarantello v. Leroy, 977 So.2d 648, 651 (Fla. 5th DCA), review denied, 987 So.2d 1210 (Fla.2008).
The State’s argument and the trial court’s reasoning suffer from another fatal flaw: they are premised on a very broad and extravagant interpretation of the statute that draws inference upon inference to arrive at their conclusions. The first inference is that because the Legislature must have been aware of telegrams and telegraphs, which were in use in 1913, it must have intended to include that form of composition and communication in the statute when it was enacted that year. From that inference another inference is drawn that the Legislature must have intended to include all forms of electronic composition and communications when it enacted the root form of the statute in 1913. And from that inference yet another is drawn, which is that the Legislature intended in 1913 that “mail” and “inscribed communication” include threatening Twitter postings and YouTube videos. But the Legislature did not specify telegrams and telegraphs as proscribed threats and it could have easily done so. And we hardly think that Twitter postings and YouTube videos were intended by the Legislature in 1913 to fall within the plain meaning of the terms “letter” and “inscribed communication.” [3] Moreover, as the development and *120 use of electronic communications has grown exponentially over the last two decades to include Twitter postings and YouTube videos, it is beyond the realm of legislative contemplation to suggest that this dramatic growth and these new forms of composition and communications formed the Legislature’s intent in 1913 when it first enacted the statute.
Even if it would be reasonable to interpret the 2009 version of the statute to include YouTube videos and Twitter postings as letters or inscribed communications (and we do not think it would be), the rule of lenity would dictate the opposite interpretation. Lenity is a deeply-rooted common law principle of statutory construction requiring strict interpretation of ambiguous criminal statutes in favor of the accused. It has not only become ensconced in our jurisprudence, it has become a statutory directive. See § 775.021(1), Fla. Stat. (2009) (“The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.”). Its importance has been emphasized by the courts, which describe it as “[o]ne of the most fundamental principles of Florida law,” Perkins v. State, 576 So.2d 1310, 1312 (Fla.1991), and its derivation comes from due process directives that require criminal statutes to say with some precision what is prohibited so everyone will be given sufficient notice of matters that may result in deprivation of life, liberty, or property. Id. Therefore, if the statute is reasonably susceptible to either interpretation, it must be strictly construed in Macchione’s favor.
We conclude that the particular threats Macchione electronically composed and communicated do not fall within the provisions of the 2009 version of section 836.10. Although these electronic communications are prohibited by the amendment enacted in 2010, that amendment constitutes a substantive change meant to be applied prospectively, and to sustain Macchione’s conviction under that amendment would violate the constitutional proscriptions against ex post facto laws. We, therefore, reverse his conviction for violating section 836.10 and vacate the sentence imposed for that offense. We remand this case to the trial court to render a corrected judgment and sentence.
REVERSED and REMANDED with instructions.
PALMER and EVANDER, JJ., concur.

. Because of Macchione’s mental illness, the State stipulated to a downward departure sentence based on the fact that Macchione was unable to conform his conduct to the requirements of the law. The sentences he received for the counts charging aggravated stalking after entry of an injunction and for aggravated stalking with a credible threat were four years in prison followed by one year of community control for each offense. These sentences were ordered to be served concurrently. He was sentenced to one year of probation for each of the counts charging violation of an injunction to be served concurrently. For the offense of violating section 836.10, Macchione was sentenced to two years of community control to be followed by thirteen years of probation.

. An order had initially been entered in the case finding Macchione incompetent to proceed. A subsequent order was rendered concluding that Macchione had been restored to competency and his plea was accepted.

. When interpreting a statute, our principal objective is to discern legislative intent from the text of the statute, see Anderson v. State, 87 So.3d 774, 777 (Fla.2012), and when "the Legislature does not define the words used in a statute, this [c]ourt first examines the plain language of the statute in order to determine the parameters of a specific element of an offense.” Paul v. State, 112 So.3d 1188, 1194-95 (Fla.2013) (citing Marrero v. State, 71 So.3d 881, 886 (Fla.2011)). As Justice Holmes stated, in the context of statutory *120 construction, “whatever the consequences, we must accept the plain meaning of plain words.” United States v. Brown, 206 U.S. 240, 244, 42 Ct.Cl. 534, 27 S.Ct. 620, 51 L.Ed. 1046 (1907). A dictionary may be utilized as an aid to understanding the ordinary meaning of statutory terms. Paul, 112 So.3d at 1195; State v. D.C., 114 So.3d 440, 442 (Fla. 5th DCA 2013).
Black’s Law Dictionary defines "letter” in pertinent part as "[a] written communication that is usu. enclosed in an envelope, sealed, stamped, and delivered (esp., an official written communication).” Black's Law Dictionary 986 (9th ed.2009). The word “inscribe” is similarly defined as "to write, engrave, or print as a lasting record” or to “enter on a list: enroll,” http://www.merriam-webster. com/dictionary/inscribe (last visited September 7, 2013), and "[t]o write, print, carve, or engrave (words or letters) on or in a surface” and "[t]o mark or engrave (a surface) with words or letters.” The American Heritage Dictionary 664 (2d ed. 1985). The Twitter postings and YouTube videos Macchione composed are neither letters, as that word is commonly understood, nor inscribed communications under these definitions.