PALMER, J.
Mercury Insurance Company (“Mercury”) filed a petition -seeking a- writ of cer-tiorari quashing the circuit court’s January 5, 2015 Final Order, entered while sitfing in its appellate capacity. The order affirmed a county- court order that concluded, under Florida’s personal injury protection (“PIP”) statute,[1] a provider of *662 emergency services such as Respondent, Emergency Physicians of Central Florida, LLP (“EPCF”), which submits bills in accordance with section 627.736(4)(c), Florida Statutes, is entitled to have the bills paid, regardless' of the existence of a deductible in the insured’s insurance contract. For the reasons that follow, we grant Mercury’s petition and' quash the circuit court’s order.
This proceeding involves the interpretation of, and interplay between, two sections of the Florida’s PIP statute, to wit: section 627.736(4)(c) and section 627.739(2), Florida Statutes (2011). Section 627.736(4)(c) requires the insurer, upon being notified of an accident, to reserve $5,000 of PIP benefits for thirty days, for payment to certain emergency service providers. Specifically, the section provides, in pertinent part:
627.736 Required personal injury protection benefits; exclusions; priority; claims
[[Image here]]
[4](c) Upon receiving notice of an accident. that is potentially covered by personal injury protection benefits, the insurer must reserve $5,000 of personal injury protection benefits for payment to physicians licensed under chapter 458 ... who provide emergency services and care, as defined in s. 395.002(9), or who provide hospital inpatient care. The amount required to be held in reserve may be used only to pay claims from such physicians or dentists until 30 days after the date the insurer receives notice of the accident. After the 30-day period, any amount of the reserve for which the insurer has not received notice of a claim from a physician ... who provided emergency services and care or who provided hospital inpatient care may then be used by the insurer to pay other claims. The time periods specified in paragraph (b) for required payment of personal injury protection benefits shall be tolled for the period of time that an insurer is required by this paragraph to hold payment of a claim that is not from a physician or dentist who provided emergency services and care or who provided hospital inpatient care to the extent that the personal injury protection benefits not held in reserve are insufficient to pay the claim ...
§ 627.736(4)(c), Fla. Stat. (2011). Section 627.739, Florida Statutes (2011), addresses insurance policy deductibles. It provides, in pertinent part:
627.739. Personal injury protection; optional limitations; deductibles
(1) The named insured may elect a deductible or modified coverage or combination' thereof to apply to the named insured alone or to the named insured and dependent relatives residing in the same household, but may not elect a deductible or modified coverage to apply to any other person covered under the policy.
(2) Insurers shall offer to each applicant and to each policyholder, upon the renewal of an existing policy, deductibles, in amounts of $250, $500, and $1,000. The deductible amount must be applied to 100 percent of the expenses and losses described in s. 627:736. After the deductible is met, each insured is eligible to receive up to $10,000 in total benefits described in s. 627.736(1). However, this subsection shall not be applied to reduce the amount of any benefits received in accordance with s. 627.736(l)(c).
(3) Insurers shall offer coverage wherein, at the election of the named insured, the benefits for loss of gross income and loss of earning capacity described in s. 627.736(l)(b) shall be excluded.
(emphasis added).
The issue in this case was whether a PIP insurer could apply the insured’s con *663 tractually-selected deductible to all bills received, in the order they are • received, including a bill submitted by an emergency service provider within the 30-day reserve period provided in section 627.736(4)(c). Here, the circuit court affirmed a judgment of the county court which ruled that the Legislature intended to give priority to emergency providers and, therefore, did not intend to have the deductible applied to them if their bills were submitted pursuant to section 627.736(4)(c). On review, the circuit court' affirmed, holding that it is only when the deductible is met by other bills that the emergency service provider’s bill is to be paid in full. ' We disagree.
The facts in this case are undisputed. Tina House was involved in a motor vehicle accident. At the time of the accident, House had a policy with Mercury that provided $10,000 in PIP benefits, with a $500 deductible. The insurance policy provided, in pertinent part:
PIP benefits shall be deducted by:
[[Image here]]
b. The deductible amount shown in the Declarations for the named insured and/or any dependent relative that applies per the election shown in the Declarations. The deductible will be applied at 100% of the expenses and losses to which this PIP- applies, except death benefits, before application of the percentage limiting recovery for disability benefits or medical benefits. After the deductible is met, the insured person is eligible to receive, subject to all other limits, terms and conditions, up- to the aggregated limit available under PIP.
House sustained injuries as a result of her accident and was treated by EPCF, Mercury received a bill for $191 from EPCF for the treatment provided to House. EPCF submitted the bill within 30 days from the date that Mercury received notice of the accident, and EPCF’s bill was the only bill submitted to Mercury within the 30-day period contemplated by section 627.736(4)(c): Thereafter, Mercury applied the $191 bill to House’s $500 deductible. Mercury did not receive another bill related to House until more than- 30 days after being notified of the accident, and Mercury did not receive sufficient bills to cover House’s $500 deductible until more than' 60 days after 'being notified of the accident.
EPCF served a statutory demand letter on Mercury, which was ignored/rejected. Thereafter, EPCF (as aásignee' of House) sued Mercury in county court for its failure to pay the statutory emergency benefits. Mercury defended on the basis' that the $191 medical bill was properly-applied to the House’s contracted-for $500 deductible. ’
EPCF moved for summary judgment asking the county court to find that, as a matter of law, section 627.736(4)(c) mandates PIP insurers to reserve $5,000 in benefits for payment to physicians, such as EPCF, who provide emergency services and care, and that the 'statute precludes Mercury from applying the bill to the in.sured’s deductible ■ when the bill was received within 30 days from the notice of the accident. Mercury filed a counter-motion for summary judgment arguing the opposite: • that section 627.736(4)(c) does not preclude an insurer from applying such a bill to the insured’s deductible.- -The county court ruled in favor of EPCF holding, in pertinent part:
The Court finds the relevant statutory provisions ambiguous and, therefore, reads Florida Statute 627.736(4)(c) and 627.739(2) in pari material (sic). This Court is of the impression that to read these two statutes independently of one another would clearly result in an outcome not contemplated by the Legislature.- This Court believes that- the Legislature’s intent was to provide an *664 additional level of protection for emergency care providers, thus ensuring ^payment of their invoices and- bills; The thirty. (30) day -provision - in 627.736(4)(c) would actually work- as -a disadvantage for- emergency care providers as it forces them to promptly bill the insurance provider. This intern (sic) would subject them to the'effects of the deductible. It is illogical to believe the Legislature created a special class, with its own funding and priority over other providers only to punish the members of the special class for tirpely submitting their bills to insurance providers.
Mercury appealed the county court’s decision to the circuit court, raising the following issue for consideration:
WHETHER THE TRIAL COURT ERRED IN CONSTRUING THE PIP AND DEDUCTIBLE STATUTES CONTRARY TO THEIR CLEAR LANGUAGE TO ACHIEVE A RESULT THAT GIVES THE INSURED GREATER BENEFITS THAN CONTRACTED FOR.
A three-judge panel of the circuit court, affirmed the county court’s conclusion, holding in pertinent part:
Mercury raises one issue on appeal: 1) whether the trial court erred and construed the PIP and deductible statutes contrary to their clear language, resulting in an improper granting of summary judgment for EPCF and entitlement to greater benefits than legally permitted. Mercury now asserts that the trial, court construed the PIP and deductible statutes contrary to their clear language and, therefore, granted summary judgment to EPCF in error. Mercury claims that, as EPCF’s bill was the first bill submitted in this accident, it was properly applied to the deductible. In this case, the deductible had not yet been met when EPCF’s bill was submitted to Mercury.
[[Image here]]
There is a mandatory statutory ■ reserve of $5,000 of personal injury protection for payment to emergency physicians (emphasis added). Fla. Stat. § 627.736(4)(c). This amount must be used to pay claims filed by such physicians within 30 days after the insurer receives notice of the accident. Id. This language is plain and unambiguous. Where statutory language is clear and unambiguous, there is no reason to resort to rules of interpretation. The statute must be given its plain and obvious meaning.
The implementation of this amended version of Fla. Stat. § 627.736(4)(c) demonstrates the Legislature’s intent to provide an additional level of protection for emergency care providers that would ensure payment of their bills.[2] To ignore this would render Section (4)(c) meaningless.
The language of this statute requires emergency physicians to submit their claims within 30 days of notice of the accident.. If these physicians are the first to submit a claim, there is an increased likelihood that the insured’s deductible will not yet be satisfied. If these bills were meant to be subject to .the deductible, then the statutory 30 day requirement is the equivalent of making certain that these physicians’ bills are applied to the insured’s deductible and potentially not paid. If the providers wait to submit their bills in order to avoid having the deductible applied to them, they run ,the risk that they will not be fully reimbursed. In cases without substantial priority medical bills, there is the risk that non-priority providers will wait until ■ the 31st day to submit their bills so that they ensure the *665 deductible will not be applied to their claim, and the remaining PIP benefits reserve can be used to pay their bills, as allowed by • statute. It is illogical to believe that the intention behind this statute was to inevitably deprive emergency physicians of the reserve fund set aside specifically for them by subjecting them tó having their bills applied to the deductible. Yet this is, exactly what would occur if these bills were not protected from being applied to the deductible.
The deductible must first be applied to benefits paid to non-priority providers when both priority and non-priority providers seek payment of PIP benefits. When a priority' provider submits á bill for payment to a PIP carrier and satisfies each of the requirements in Fla. Stat. §' 627.736(4)(c), it is entitled to be paid from the' $5,000 reserve and -its charges cannot be used to '• satisfy an elected deductible. There is no statutory language that implies that the reservation goes into' effect only after the deductible has been met.- This reserve is automatically set aside and made available for payment.
In this case, the record reflects that there- were non-priority providers who submitted bills for payment. Two of these bills were applied to the deductible along with EPCF’s bills. As both priority and non-priority providers were seeking payment of PIP benefits, the bills from non-priority providers instead of EPCF’s should have been applied to the deductible. It is only, when the deductible is satisfied by non-protected providers that the protected provider’s bill would be paid. In this case, the bills of the non-priority providers would have sufficiently satisfied the deductible, which this Court has previously found is a well-reasoned argument behind not applying the priority provider’s bills to the deductible. After these bills satisfied the deductible, the priority .providers are to be paid out of the reserve fund. If there are funds remaining, non-priority providers .can also be paid from this fund. ,.
If no non-priority bills are received in a claim,, the protected provider’s bills would be applied to the deductible. However, that is not the case here. It is clear that there were bills submitted by non-protected providers and these should have been applied to the deductible before applying the priority provider’s bills.
Mercury acted improperly when it applied EPCF’s bill to the deductible. There were a myriad of non-priority bills that could have been applied to the deductible first. After this, EPCF’s .bills should have been paid out of- the reserve fund which could then also be used to pay the remainder of the non-priority bills. To act differently would be to render Section 627.736(4)(c) pointless as it would not be fulfilling the legislative .intent of setting aside money for priority providers in order to guarantee that they receive payment instead of risk non-payment as a result of being applied to a deductible.
In footnote 2, the court stated:
Prior to January 1, 2008, Florida’s PIP statute did not have this type of delineation between priority and non-priority providers, putting all "providers in an equal position for application to the deductible and receiving of funds from insurers. The amendment of this statute makes it clear that the Legislature wished to change this lack of prioritization, and to provide a protected, recog- . nized. class with a guarantee of payment through the use of a mandatory reserve fund. This guarantee is only. given to priority providers but allows non-priority providers to receive payment from *666 the remainder of funds still available 30 days after the notice of accident was given.
Mercury' moved for rehearing, arguing that the circuit court had overlooked and misapprehended the relevant law because (a) the deductible statute provides that the deductible applies to 100% of the providers’ bills listed in section 627.736; (b) the deductible statute was not amended when section 627.736(4)(c) was enacted; (c) although section 627.736(4)(c) gives priority to certain medical providers, it does not guarantee payment to said providers without regard to the contracted-for available coverage; and (d) in that the PIP insurer must satisfy the deductible by applying it to bills from non-priority providers, the circuit court overlooked the 30-day payment requirement set' forth in section 627.736(4)(b). The court agreed with Mercury’s position on rehearing, 1 granted its motion, and reversed the county court’s order. The same three-judge circuit court panel concluded, in pertinent part:
The Legislature’s intention must be evident from the language of the statute itself and the Court must not be left to rely on conjecture. A.R. Douglass, Inc, v. McRainey, 102 Fla, 1141, 137 So. 157, 159 (1931). Where the' language of a statute is clear and unambiguous, the statute must' be given its plain and ordinary meaning. Zuckerman v. Alter, 615 So.2d 661, 663 (Fla.1993).
Section 627.736, Florida Statutes, states that there is a mandatory reserve of $5,000 that should be kept for payment of bills from emergency providers. Section 627.739(2), Florida Statutes, states that the deductible amount must be applied to 100 percent of the expenses and losses that are listed in section 627.736. There is ho exception stating that the bills of emergency providers are not subject to the deductible. There is, however, an exception for death benefits under section 627.736(l)(c), Florida Statutes. If it is the Legislature’s intention to allow emergency providers this same protection, then a similar excep- ' tion should be included in the statute.
It is important that the Legislature’s intentions be clear through the writing of statutes. As long as the wording of a statute is unambiguous, it should be followed exactly as constructed. If, however, it is determined that specific possibilities are not considered, perhaps additional legislation is required in order to further elaborate and fully dictate the intentions of the Legislature. This is something that cannot be done by the Court. See Cont’l Cas. Co. v. Ryan Inc,, 974 So.2d 368, 379 (Fla.2008) (finding that “[Ijt.is outside this Court’s purview to correct a potential inequity by interpreting a statute contrary to its plain language.”). ..In conclusion, this Court finds that based on the plain meaning of the statutes in relation to the subject medical claim by EPCF, an emergency provider, the trial court erred in granting summary judgment in favor of EPCF by finding that Mercury improperly applied the medical claim to the deductible.
However, léss than a month later, the same three-judge circuit court panel sua spOnte reversed itself, issuing an “Order Vacating Order Granting Motion for Rehearing”, holding, in pertinent part:
The February 3, 2015 Order Granting Appellant’s Motion for Rehearing and Final Order Reversing Trial Court is VACATED and the January 5, 2015 Filial Order and Opinion Affirming Trial Court’s Final Judgment is REINSTATED.
Mercury .again moved for rehearing, but the motion was denied.
Mercury timely filed the instant certio-rari petition, asserting that the Order Vacating Order Granting Motion for Rehear *667 ing is erroneous because the circuit court’s January 5,2015 Final Order violates established principles of law resulting in a miscarriage of justice. We agree. We hold that the circuit court’s order departed from the essential requirements of the law because the court incorrectly interpreted and applied sections 627.736(4)(c) and 627.739(2), Florida Statutes (2011).
Section 627.736(4)(c), addressing the payment of claims made by emergency service providers within the 30-day reserve period, says nothing about the impact (if any) of a contracted-for deductible. See Anderson v. State, 87 So.3d 774, 777 (Fla.2012) (“A court primarily discerns legislative intent by looking to the plain text of the relevant statute.”). Conversely, section 627.739(2), Florida Statutes (2011), speaks specifically to the impact of the deductible provisions of section 627.736":
The deductible amount must be applied to 100 percent of the expenses and losses described in s. 627.736. After the deductible is met, each insured is eligible to receive up to $10,000 in total benefits described in s. 627.736(1). However, this subsection shall not be applied to reduce the amount of any benefits received in accordance with s. 627.736(l)(c).
The plain language of section 627.739(2) thus dictates that any, contracted-for deductible must be applied “to 100 percent of the expenses and losses described in s. 627.736”, making no distinction between bills submitted by an emergency service provider and bills submitted by a non-emergency service provider. The statute further states that once “the deductible is met, each insured is eligible to receive up to $10,000 in total benefits described in s. 627.736(1).” The meeting of the contracted-for deductible unlocks -the insured’s right to access his/her $10,000 in PIP benefits. .
This interpretation is consistent with the recognized purpose- of a deductible. As was noted in General Star Indemnity Company v. West Florida Village Inn, Inc., 874 So.2d 26, 33-34 (Fla. 2d DCA 2004):
A “deductible” is.“a clause in an insurance policy that relieves the insurer of responsibility for an initial specified loss of the kind insured against.” Merriam-Webster’s Collegiate Dictionary 471 (deluxe ed.1998).
[[Image here]]
“Generally, the functional purpose of a deductible, which is frequently referred to as self-insurance, is to alter the point at which an insurance company’s obligation to pay will ripen.” Int’l Bankers Ins. Co. v. Arnone, 552 So.2d 908, 911 (Fla.1989).
Thus, an insured. enters into a contract with an insurance company and agrees to be subject to a deductible in exchange for a reduced monthly premium. In effect, the insured agrees to “self-insure” for the deductible amount. Where an accident occurs, the insured (not the insurer) becomes responsible for payment, of claims that are otherwise impacted by the • deductible amount in the insurance policy.
The fact that' section 627.739(2) specifically provides that a deductible “shall not be applied to reduce the amount of any benefits received in accordance with s. 627.736(l)(c) [addressing death benefits]” offers further evidence that there was no legislative intent to insulate bills submitted by emergency service providers pursuant to section 627.736(4)(c) from the application of an existing deductible. The application of the general principle of statutory construction that the mention of one thing implies the exclusion of another, dictates this conclusion. See United Auto. Ins. Co. v. Salgado, 22 So.3d 594, 600 (Fla. 3d DCA 2009) (“It is, of course, a general principle *668 of statutory construction that.the mention of one thing implies the exclusion of another; expression unius est exclusion alteri-us. Henee, where a statute enumerates the things on which it is to operate, or forbids certain things, it is ordinarily to be construed .as excluding from its operation all those not expressly mentioned”) (quoting Thayer v. State, 335 So.2d 815, 817 (Fla.1976)). In other words, if the Legislature had intended to exclude claims submitted by emergency service providers from being applied to an existing deductible, it could have certainly said so as it did with respect to death benefits under section 627.736(1)(c).
' In sum, reading the two statutory provisions together leads to the inescapable conclusion that the $500 deductible was correctly applied to EPCF’s $191 bill. The plain language of the two sections is not in conflict and provides that,-where an emergency service provider submits its claims within the 30-day reserve-period provided in section 627.736(4)(c), those claims will be prioritized for payment; however, any such payment will be subject to any deductibles that exist in the insurance contract between the insured and the insurer. Under these circumstances, • it was a departure from the essential requirements of the law for the circuit court to affirm the county court’s order.
Petition GRANTED; Circuit Court Order QUASHED; Cause REMANDED.
TORPY and COHEN, JJ., concur.

. See § .627.736, Fla. Stat. (2011).