IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

PROGRESSIVE SELECT INSURANCE
COMPANY,

   Petitioner,

 v.            Case No.  5D16-2333

FLORIDA HOSPITAL MEDICAL CENTER
A/A/O JONATHAN PARENT,

   Respondent.

_____/

Opinion filed February 9, 2018

Petition for Certiorari Review of Decision
from the Circuit Court for Orange County
Acting in its Appellate Capacity.

Douglas H. Stein, of Bowman and Brooke,
LLP, Coral Gables, for Petitioner.

Chad A. Barr, of Law Office of Chad A. Barr,
P.A., Altamonte Springs, for Respondent.

Lawrence M. Kopelman, of Lawrence M.
Kopelman, P.A., Fort Lauderdale and Mac
S. Phillips and Chris Tadros, of Phillips
Tadros, P.A., Fort Lauderdale, as Amicus
Curiae Floridians for Fair Insurance, Inc.

ON MOTION FOR REHEARING AND MOTION TO CERTIFY

SAWAYA, J.

Progressive Select Insurance Company has filed a motion for rehearing and a motion to certify a question of great public importance to the Florida Supreme Court. We grant the motion for rehearing and the motion to certify. We withdraw the previous opinion and substitute the following in its stead.

This certiorari proceeding concerns the proper methodology to determine the application of the deductible authorized under section 627.739(2), Florida Statutes (2014), when personal injury protection ("PIP") benefits are sought by an insured. The decision we review (rendered by the circuit court in its appellate capacity) provides that, when calculating the amount of PIP benefits due to the insured, section 627.739(2) requires the deductible to be subtracted from the total medical care charges before applying the statutory reimbursement limitations provided in section 627.736(5)(a)1.b., Florida Statutes (2014). The respondent, Florida Hospital Medical Center, contends that the court applied the correct law in utilizing this methodology. Progressive argues that the statutory limitations must be applied first and the deductible subtracted from that amount. The issue is thus framed, and we must decide whether the circuit court properly interpreted the pertinent statutory provisions and applied the correct methodology. This issue has generated numerous conflicting decisions by the county and circuit courts,[1] so

---

[1] See, e.g., Progressive Select Ins. v. Fla. Hosp. Med. Ctr., 24 Fla. L. Weekly Supp. 318a (Fla. 9th Cir. Ct. June 14, 2016); Progressive Select Ins. v. Fla. Hosp. Med. Ctr., 24 Fla. L. Weekly Supp. 200a (Fla. 9th Cir. Ct. June 14, 2016); cf. Advantacare of Fla., LLC v. Geico Indem. Co., 23 Fla. L. Weekly Supp. 841a (Fla. 7th Cir. Ct. July 24, 2015); Progressive Am. Ins. v. Munroe Reg'l Health Sys., Inc., 23 Fla. L. Weekly Supp. 707a

we issue this opinion to provide precedent and a basis of continuity for future trial court rulings. See Fla. Med. & Injury Ctr., Inc. v. Progressive Express Ins., 29 So. 3d 329, 331 (Fla. 5th DCA), review denied, 46 So. 3d 567 (Fla. 2010).

### *Factual and Procedural Background*

A discussion of the circumstances surrounding the accident that led to the insured's claim for PIP benefits is not particularly helpful to resolve the issue before us, so we will not dwell on that aspect of the underlying case. It is enough to say that after the insured, Jonathan Parent, was involved in an automobile accident, he incurred bills for the medical care he received from Florida Hospital. Those bills exceeded the deductible amount of $1000 provided in the insurance policy issued by Progressive. As is typical in these cases, Parent assigned his PIP benefits under the policy to Florida Hospital (hence the designation "a/a/o" in the caption, which means "as assignee of"). The bill Florida Hospital sent to Progressive for Parent's treatment calculated the amount owed as follows:

```
  $2,781.00   Total hospital charge
- $1,000.00   Parent's PIP deductible
  $1,781.00
      X 75%   Applying section 627.736(5)(a)1.b.
  $1,335.75
      X 80%   Applying section 627.736(5)(a)1.
  $1,068.60   Amount Due
```

Progressive remitted payment, but it used a different payment methodology when applying section 627.736(5)(a)1.b.'s reimbursement limitation provision:

```
  $2,781.00   Total hospital charge
      X 75%   Applying section 627.736(5)(a)1.b.
```

---

(Fla. 18th Cir. Ct. Apr. 17, 2015); Garrison Prop. & Cas. Ins. v. New Smyrna Imaging, LLC, 23 Fla. L. Weekly Supp. 708a (Fla. 18th Cir. Ct. Jan. 12, 2015).

3

```
  $2,085.75
- $1,000.00   Parent's PIP deductible
  $1,085.75
      X 80%   Applying section 627.736(5)(a)1.
$   868.60   Amount Due
```

Florida Hospital thereafter filed suit against Progressive in the county court seeking the $200 difference between what it calculated the PIP benefit amount to be and what Progressive paid. After Progressive filed an answer denying liability and asserting affirmative defenses, both parties filed motions for summary judgment.

The county court entered a final summary judgment in favor of Florida Hospital in the amount of $200, plus interest, thus adopting Florida Hospital's argument that the plain language of section 627.739(2) required Progressive to subtract Parent's deductible from Florida Hospital's total charges before applying section 627.736(5)(a)1.b.'s reimbursement limitation. Progressive appealed, and the circuit court affirmed the county court's judgment. This certiorari proceeding followed.

Before continuing further, it is necessary to note the limitations of our review. Second-tier certiorari review is limited to determining whether the circuit court: (1) accorded procedural due process and (2) applied the correct law. Dep't of High. Saf. & Motor Veh. v. Alliston, 813 So. 2d 141, 144 (Fla. 2d DCA 2002). Here, the pertinent inquiry is whether the circuit court applied the correct law when interpreting sections 627.736(5)(a)1.b. and 627.739(2) to determine whether the county court utilized the correct methodology to apply the deductible. Certiorari relief can be granted only if Progressive demonstrates that there has been a violation of a clearly established principle of law resulting in a miscarriage of justice. Futch v. Fla. Dep't of High. Saf. & Motor Veh., 189 So. 3d 131, 132 (Fla. 2016). Clearly established law derives from a variety of legal

4

sources, including the interpretation of statutes. Allstate Ins. v. Kaklamanos, 843 So. 2d 885, 890 (Fla. 2003).

### Statutory Analysis

In order to determine whether the circuit court applied the correct law, we must analyze the statutory provisions at issue, which are an integral part of the Florida Motor Vehicle No-Fault Law.[2] Florida's No-Fault Law has historically been a complicated body of legislation, and the constant revisions and amendments since its inception[3] have contributed to its complexity. See Fla. Med., 29 So. 3d at 337. As will be seen a little later, however, instances may arise when the historical development of the law reveals clear legislative intent. When interpreting the provisions of the No-Fault Law, the Florida Supreme Court has explained that the statutes "must be liberally construed in order to effect the legislative purpose of providing broad PIP coverage for Florida motorists." Blish v. Atlanta Cas. Co., 736 So. 2d 1151, 1155 (Fla. 1999); see also Vasques v. Mercury Cas. Co., 947 So. 2d 1265, 1269 (Fla. 5th DCA 2007) ("[B]oth this court and the Florida supreme court have held the provisions of Florida's No-Fault Act must be construed liberally in favor of the insured.").

We begin our analysis with section 627.739, which states in pertinent part:

---

[2] Section 627.730, Florida Statutes (2014), provides that "[s]ections 627.730-627.7405 may be cited and known as the 'Florida Motor Vehicle No-Fault Law.'"

[3] Referring just to section 627.736, which is commonly known as the PIP statute, the court in GEICO General Insurance v. Virtual Imaging Services, Inc., 141 So. 3d 147, 152 (Fla. 2013), stated that "[s]ince the PIP statute was first enacted in 1971, the Legislature has amended the statute numerous times, including every year between 1987 and 1999, and again every year between 2003 and 2009."

> Insurers shall offer to each applicant and to each policyholder, upon the renewal of an existing policy, deductibles, in amounts of $250, $500, and $1,000. The deductible amount must be applied to 100 percent of the expenses and losses described in s. 627.736. After the deductible is met, each insured is eligible to receive up to $10,000 in total benefits described in s. 627.736(1). However, this subsection shall not be applied to reduce the amount of any benefits received in accordance with s. 627.736(1)(c).

§ 627.739(2), Fla. Stat. (2014) (emphasis added). This statute distinguishes between "expenses and losses" and "benefits." The second sentence states that the deductible "must be applied to 100 percent of the expenses and losses." In the very next sentence, the statute provides that "[a]fter the deductible is met, each insured is eligible to receive up to $10,000 in total benefits." Thus, the statute indicates that the deductible applies to "100 percent of the expenses and losses" whereas "benefits" refers to the calculated amount after the deductible has been applied to the total expenses and losses and after application of the statutory reimbursement limitations found in section 627.736.

"Expenses and losses" are not defined in the statute, but they are described in section 627.736(1). Section 627.736(1)(a) specifically provides that the insured may be entitled to "[e]ighty percent of all reasonable expenses for medically necessary medical, surgical, X-ray, dental, and rehabilitative services." § 627.736(1)(a), Fla. Stat. (2014) (emphasis added). Similarly, section 627.736(1)(b) refers to "[s]ixty percent of any loss of gross income and loss of earning capacity" and "all expenses reasonably incurred in obtaining from others ordinary and necessary services" associated with the disability of an insured. § 627.736(1)(b), Fla. Stat. (2014) (emphasis added).

In addition to describing expenses and losses, section 627.736(1) also describes benefits and establishes separate methodologies (80% reimbursement limitation for

6

medical expenses and 60% reimbursement limitation for disability expenses and losses) for calculating how much of the expenses and losses will be paid as benefits. On the other hand, section 627.739 requires that the deductible must be applied to "100 percent of the expenses and losses." In other words, the 80% and 60% methodologies in section 627.736(1) are intended to limit reimbursements in order to establish benefits. They are not intended to describe the application of the deductible under the 100% methodology provided in section 627.739(2).

Specifically, Progressive contends that the reimbursement limitations contained in section 627.736(5)(a)1.b. should be applied to reduce the expenses and losses and that the deductible should be subtracted from that reduced amount to arrive at the benefit amount owed to the insured. We disagree because, using that methodology, the deductible is not being applied toward 100% of the expenses and losses as required by section 627.739(2). Section 627.736(5)(a)1. provides the insurer with an option to determine benefits pursuant to a schedule of reimbursement limitations. This statutory provision is part of legislative amendments enacted in 2008. It states in pertinent part:

> 1. The insurer <u>may limit reimbursement</u> to 80 percent of the following schedule of maximum charges:
>
> . . . .
>
> b. For emergency services and care provided by a hospital licensed under chapter 395, 75 percent of the hospital's usual and customary charges.

§ 627.736(5)(a)1., Fla. Stat. (2014) (emphasis added). "The word 'may' when given its ordinary meaning denotes a permissive term rather than the mandatory connotation of the word 'shall.'" <u>Fla. Bar v. Trazenfeld</u>, 833 So. 2d 734, 738 (Fla. 2002).

We believe that application of the optional reimbursement limitations to establish a reduced amount of expenses and losses from which the deductible amount is subtracted would render meaningless the requirement in section 627.739(2) that "[t]he deductible amount must be applied to 100 percent of the expenses and losses." See Borden v. E.-Eur. Ins., 921 So. 2d 587, 595 (Fla. 2006) ("It is . . . a basic rule of statutory construction that 'the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless.'").

### *Historical Development of Section 627.739(2)*

The Legislature knows how to write statutory provisions that would require the deductible amount to be subtracted from the benefits due under the policy, which are determined after the reimbursement limitations are applied. Indeed, the prior version of section 627.739(2) stated:

> Insurers shall offer to each applicant and to each policyholder, upon the renewal of an existing policy, deductibles, in amounts of $250, $500, $1,000, and $2,000, such amount to be deducted from the benefits otherwise due each person subject to the deduction. However, this subsection shall not be applied to reduce the amount of any benefits received in accordance with s. 627.736(1)(c).

§ 627.739(2), Fla. Stat. (1999) (emphasis added). The Florida Supreme Court reviewed the emphasized provision and held that the clear meaning of the statute required that the benefits due under the policy be calculated utilizing the reimbursement limitation (which at that time was 80% of the medical expenses) and that the deductible amount was to be subtracted from that calculation. Govan v. Int'l Bankers Ins., 521 So. 2d 1086, 1088 (Fla. 1988) ("The plain reading of this statute requires a construction that subtracts the deductible from the eighty percent of the medical expenses."); see also Int'l Bankers Ins.

8

v. Arnone, 552 So. 2d 908, 911 (Fla. 1989) ("Under the statutory scheme, the deductible amounts are to be deducted from 'benefits otherwise due.' . . . Section 627.736(1) defines the parameters of the benefits otherwise due under a PIP policy as including eighty percent of certain medical expenses and sixty percent of lost wages . . . ."). Therefore, under this prior version of the statute, the deductible was required to be satisfied from the amount that was actually payable out of the policy benefits.

In Govan, the Florida Supreme Court lamented the methodology required by the prior version of section 627.739(2) and invited the Legislature to address the issue:

> While we may disagree with the legislative policy underlying the statute, we have no authority to change the clear intent and purpose of a statute that is not vague and ambiguous. Complaints about this policy should be addressed to the legislature.*
>
> * We note the legislature, during the 1987 session, failed to enact a bill which would have amended the statute to make it consistent with the statutory interpretation presented here by the petitioner. House Bill 1015.

521 So. 2d at 1088. In response to Govan and Arnone, the Florida Legislature in 2003 amended section 627.739(2) to require:

> (2) . . . The deductible amount must be applied to 100 percent of the expenses and losses described in s. 627.736. After the deductible is met, each insured is eligible to receive up to $10,000 in total benefits described in s. 627.736(1).

§ 627.739(2), Fla. Stat. (2003).[4] The obvious intent of the Legislature was to replace the term "benefits otherwise due" with "expenses and losses" in determining what the

---

[4] In its motion for summary judgment filed in the county court, Florida Hospital relied on the 2003 Senate Staff Analysis and Economic Impact Statement to argue that the intent of the 2003 amendments was to apply the deductible before reducing the medical expenses pursuant to the statutory reimbursement limitations. Specifically, the pertinent part of the staff analysis provides:

9

deductible would be applied to, moving the term "benefits" to the next sentence, which discusses the insurer's liability <u>after</u> the deductible is satisfied.  Thus, the current version of the statute provides a clear distinction between "expenses and losses" for purposes of applying the deductible and "benefits" that are due to the insured after the reimbursement limitations are applied.

The legislative amendment in 2003 constituted a substantive change in the sequence of applying the deductible in PIP cases.  The Legislature, by requiring that the deductible be applied to 100% of the expenses and losses, abandoned the previous methodology of subtracting the deductible from the benefits due under the policy after applying the reimbursement limitations.  Despite this legislative change in 2003,

_____

[The bill] [a]mends s. 627.739, F.S., relating to PIP deductibles, to change the calculation of the PIP deductible to require that it must be applied to 100 percent of medical expenses, rather than to the current 80 percent of expenses that PIP pays.  This provision has the effect of requiring PIP to pay more in benefits than it does now if a deductible is elected.  For example, under current law:  $5,000 medical bill, PIP pays 80 percent, or $4,000, minus $2,000 deductible = $2,000.  Under this provision:  $5,000 medical bill, minus $2,000 deductible, is $3,000.  PIP pays 80 percent X $3,000 = $2,400.

Fla. S. Comm. on Banking & Ins., CS for SB 32-A (2003) Staff Analysis 16 (May 15, 2003). We have not relied on this report in our analysis.  We note it here because it confirms our conclusion about how the deductible should be applied under section 627.739(2).  <u>See Townsend v. R.J. Reynolds Tobacco Co.</u>, 192 So. 3d 1223, 1229 (Fla. 2016) (noting that, after examining a staff analysis of the enacting law, "[a]lthough it is not necessary to delve into the legislative history of section 55.03(3), Florida Statutes (2010), because the language is clear and unambiguous, the legislative history nevertheless confirms our reading of the statute"); <u>Diamond Aircraft Indus., Inc. v. Horowitch</u>, 107 So. 3d 362, 368 (Fla. 2013) ("The legislative summary in a staff analysis regarding FDUTPA affords further support for the principal [sic] . . . ."); <u>Larimore v. State</u>, 2 So. 3d 101, 109 n.4 (Fla. 2008) ("This interpretation is confirmed by Senate staff analyses on chapter 99-222, Laws of Florida . . . ."); <u>G.G. v. Fla. Dep't of Law Enf.</u>, 97 So. 3d 268, 273 (Fla. 1st DCA 2012) ("Our decision does not rely on staff analyses. . . .  The staff analyses support the position advocated here by G.G., not FDLE.").

Progressive and the dissent argue that the methodology advanced in the previous version of section 627.739 (as interpreted by the Florida Supreme Court in Govani and Arnone) should continue to be applied by the courts under the current version of the statute. We do not believe that the Legislature would find it necessary to amend the statute as it did in 2003 if, as Progressive and the dissent essentially argue, there was to be no change in the methodology. As we have previously indicated, the Legislature does not intend to enact useless legislation. See Dennis v. State, 51 So. 3d 456, 463 (Fla. 2010); Borden, 921 So. 2d at 595; State v. Goode, 830 So. 2d 817, 824 (Fla. 2002); Macchione v. State, 123 So. 3d 114, 119 (Fla. 5th DCA 2013).

The court in Govan noted that during the 1987 legislative session, the Legislature failed to enact a bill that would change the methodology described in the prior version of section 627.739(2). Similarly, it should be noted here that during the 2016 legislative session, the Florida Legislature failed to enact a proposed bill that would amend section 627.739(2) to incorporate the methodology of subtracting the deductible amount after the reimbursement limitations are used to determine the benefits due under the policy. Specifically, the proposed amendment stated:

> Section 5. Subsection (2) of section 627.739, Florida Statutes, is amended to read:
>
> 627.739 Personal injury protection; optional limitations; deductibles.—
>
> (2) Insurers shall offer to each applicant and to each policyholder, upon the renewal of an existing policy, deductibles, in amounts of $250, $500, and $1,000. The deductible amount must be applied to 100 percent of the expenses and losses covered under personal injury protection benefits coverage issued pursuant to described in s. 627.736. If an insurer has elected to apply the schedule of maximum charges authorized under this chapter, the amount of

11

> expenses and losses applicable to the deductible will be limited to 100 percent of such authorized reimbursement limitations or fee schedules. After the deductible is met, each insured is eligible to receive up to $10,000 in total benefits described in s. 627.736(1). However, this subsection shall not be applied to reduce the amount of any benefits received in accordance with s. 627.736(1)(c).

Fla. SB 1036 (2016) (words stricken are deletions; words underlined are additions); see also Fla. HB 659 (2016) (same). This amendment incorporates the same methodology Progressive and the dissent argue should apply under the current version of section 627.739(2). The Legislature did not adopt this amendment.

The dissent labels this failed amendment a clarification of the current statute. We disagree. The thirteen-year span between enactment of the current statute and introduction of the failed amendment establishes that it would have been a substantive revision. See Parole Comm'n v. Cooper, 701 So. 2d 543, 544-45 (Fla. 1997) ("[I]t is inappropriate to use an amendment enacted ten years after the original enactment to clarify original legislative intent."); State Farm Mut. Auto. Ins. v. Laforet, 658 So. 2d 55, 62 (Fla. 1995) ("It would be absurd . . . to consider legislation enacted more than ten years after the original act as a clarification of original intent . . . ."); Macchione, 123 So. 3d at 117. Moreover, the title to the bill incorporating the failed amendment states:

> An act relating to automobile insurance; . . . amending s. 627.739, F.S.,; revising applicability; providing a limitation to an amount of expenses and losses applicable to a deductible related to personal injury protection benefits under a certain condition . . . .

Fla. SB 1036 (2016). The title of a proposed law may reveal whether the Legislature intended to substantively change a statute or to clarify its provisions. See Hassen v. State Farm Mut. Auto. Ins., 674 So. 2d 106, 109-10 (Fla. 1996); see also Earth Trades, Inc. v.

12

T & G Corp., 108 So. 3d 580, 585 (Fla. 2013); Kasischke v. State, 991 So. 2d 803, 809 (Fla. 2008); State v. Webb, 398 So. 2d 820, 825 (Fla. 1981) ("The title is more than an index to what the section is about or has reference to; it is a direct statement by the legislature of its intent." (citation omitted)); Macchione, 123 So. 3d at 118. There is nothing in this language indicating that the amendment was intended to be a clarification.

### *The "Unreasonable Bill" Argument Advanced by Progressive and the Dissent*

Progressive and the dissent argue that the methodology they advance will ensure that the medical provider does not render a bill for services that is unreasonable. The reasonableness of the medical bills for services rendered to Parent in the instant case is not an issue raised by any party in these proceedings. Indeed, Progressive stated in its petition for writ of certiorari that "the point of contention in this case is whether the deductible applies to a charge before the charge is limited by the 75% payment limitation provided by Florida Statute § 627.736(5)(a)1.b, or after the charge is limited by the 75% payment limitation." In any event, we reject this argument for several reasons.

First, it overlooks the distinctions between a deductible and a statutory reimbursement limitation, and it disregards the reason the Legislature approved the applicable provisions. The deductible provisions of section 627.739(2) were enacted to allow for reductions in the amount of the premiums charged by the insurer and to determine the amount of risk through self-insurance the insured has agreed to assume. See Mercury Ins. of Fla. v. Emergency Physicians of Cent., 182 So. 3d 661, 667 (Fla. 5th DCA 2015). Coverage under the policy is not triggered until the deductible amount is met. Id. On the other hand, once coverage is triggered under the policy, the statutory reimbursement limitations provide a methodology for determining the amount of benefits

due to the insured. See Virtual Imaging, 141 So. 3d at 153 (explaining that the reimbursement limitations enacted in 2008 "provided, in part, more specific guidelines regarding a PIP insurer's ability to limit reimbursements" (emphasis added)). As this court explained in Mercury Insurance, "[t]he meeting of the contracted-for deductible unlocks the insured's right to access his/her $10,000 in PIP benefits." 182 So. 3d at 667. This court further explained:

> This interpretation is consistent with the recognized purpose of a deductible. As was noted in General Star Indemnity Company v. West Florida Village Inn, Inc., 874 So. 2d 26, 33-34 (Fla. 2d DCA 2004):
>
> > A "deductible" is "a clause in an insurance policy that relieves the insurer of responsibility for an initial specified loss of the kind insured against." Merriam-Webster's Collegiate Dictionary 471 (deluxe ed. 1998).
> >
> > . . . .
> >
> > "Generally, the functional purpose of a deductible, which is frequently referred to as self-insurance, is to alter the point at which an insurance company's obligation to pay will ripen." Int'l Bankers Ins. Co. v. Arnone, 552 So. 2d 908, 911 (Fla. 1989).
>
> Thus, an insured enters into a contract with an insurance company and agrees to be subject to a deductible in exchange for a reduced monthly premium. In effect, the insured agrees to "self-insure" for the deductible amount. Where an accident occurs, the insured (not the insurer) becomes responsible for payment of claims that are otherwise impacted by the deductible amount in the insurance policy.

Id. We do not believe that the Legislature intended the statutory reimbursement limitations to be applied to expenses and losses that fall within the insured's deductible, which the insured alone is obligated to pay and which are not recoverable as benefits under the policy.

14

Second, the insured certainly has the right to contest any bill that the insured is required to pay to meet the deductible. The Legislature has provided that an "insured is not required to pay a claim or charges . . . [t]o any person who knowingly submits a false or misleading statement relating to the claim or charges." § 627.736(5)(b)1., Fla. Stat. (2014). Moreover, medical care providers are prohibited from rendering any bill for services that is false or fraudulent, and those that do may suffer severe criminal and civil penalties. See § 817.234(1)(a), Fla. Stat. (2014). Section 817.234 also prohibits a medical care provider from rendering a bill it does not intend to collect from the insured in order to meet the deductible amount and trigger coverage under the policy. § 817.234(7)(a), Fla. Stat. (2014) ("It shall constitute a material omission and insurance fraud . . . for any service provider, other than a hospital, to engage in a general business practice of billing amounts as its usual and customary charge, if such provider has agreed with the insured or intends to waive deductibles or copayments, or does not for any other reason intend to collect the total amount of such charge.").

Third, it bears repeating that the provisions of the No-Fault Law must be construed in favor of the insured. Interpreting the pertinent statutory provisions in a manner that supports the methodology urged by Progressive and the dissent would not further the principle of providing broad PIP coverage to the insured. Rather, as established by the calculation made by Progressive in its benefits payment (which is discussed at the beginning of this opinion), that interpretation would allow the insurer to pay less in benefits than would otherwise be due.

Finally, the dissent bases its argument on a quote from the decision in Garrison, 23 Fla. L. Weekly Supp. at 708a. The quote states that several sections in 627.736,

15

which are specifically cited by the Garrison court, refer to expenses "covered by the policy." We believe this decision is flawed because not one of the provisions of section 627.736 cited by the court in Garrison contains the language "covered by the policy." In any event, there are an equal number of circuit court opinions that reach the opposite result, and we believe they are the better reasoned decisions.

### *Conclusion*

We conclude that application of the methodology advanced by Progressive and the dissent would require that we revert to the provisions of section 627.739(2) that were in effect before the 2003 amendment. It is not for this court to pick and choose which version of the statute to apply; we must apply the law as it currently exists. Section 627.739(2) currently requires that the deductible be applied to 100% of the expenses and losses, and that is the version the circuit court properly applied. We see no divergence from the correct law in the circuit court's decision, and we see no violation of a clearly established principle of law that results in a miscarriage of justice. Accordingly, we deny the petition for writ of certiorari.

We certify the following question to the Florida Supreme Court as a matter of great public importance:

> WHEN CALCULATING THE AMOUNT OF PIP BENEFITS DUE AN INSURED, DOES SECTION 627.739(2), FLORIDA STATUTES, REQUIRE THAT THE DEDUCTIBLE BE SUBTRACTED FROM THE TOTAL AMOUNT OF MEDICAL CHARGES BEFORE APPLYING THE REIMBURSEMENT LIMITATION UNDER SECTION 627.736(5)(a)1.b., OR MUST THE REIMBURSEMENT LIMITATION BE APPLIED FIRST AND THE DEDUCTIBLE SUBTRACTED FROM THE REMAINING AMOUNT?

16

PETITION DENIED and QUESTION CERTIFIED.

EDWARDS, J., concurs.
PALMER, J., concurring in part, dissenting in part, with opinion.

PALMER, J., concurring in part and dissenting in part. 5D16-2333

I concur with the majority in certifying the question to the Florida Supreme Court. I otherwise respectfully dissent.

As the circuit court for the Eighteenth Judicial Circuit observed in Garrison Property & Casualty Insurance Co. v. New Smyrna Imaging, LLC:

> As an initial step under s. 627.739(2), the insurer must first determine what are the "expenses and losses described in s. 627.736," in order to apply the deductible to 100% of those expenses and losses. Section 627.736 contains several references to expenses, almost all of which are described as or used in the context of reasonable expenses or expenses "covered by the policy." Section 627.736(1)(a), (1)(b), & (6)(b), Fla. Stat. (footnote omitted). Thus, when read together, section 627.739 and section 727.736 require that a PIP deductible be applied to 100% of the reasonable and necessary medical expenses, or those expenses covered by the policy.

23 Fla. L. Weekly Supp. 708a (Fla. 18th Cir. Ct. Jan. 12, 2015). Section 627.739(2)'s references to section 627.736 necessarily include references to the reimbursement limitation of section 627.736(5)(a)1.b. and, therefore, "100 percent of the expenses . . . described in s. 627.736" includes the reimbursement limitation set forth in the current section 627.736(5)(a)1.b.

The majority concludes that "medical expenses" are not the same as "medical benefits" under the PIP statute. I disagree. Medical expenses covered under PIP are limited to those services and expenses which are reasonable and necessary. See Geico Gen. Ins. Co. v. Virtual Imaging Servs. Inc., 141 So. 3d 147 (Fla. 2013). Under the majority's interpretation of section 627.739(2), the deductible could be applied to a charge which is unreasonably high and thus not covered by PIP. "The notion that a deductible

18

could be applied to loss that is not covered by the policy is fundamentally unreasonable." Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc., 874 So. 2d 26, 33 (Fla. 2d DCA 2004).

The majority relies on the fact that the Legislature failed to enact a proposed law in 2016 which explicitly recognized the calculation method propounded by Progressive as evidence that that calculation method is not supported by the current law. However, the Bill Analysis and Fiscal Impact Statement for that bill explained that the proposed amendment sought to "clarify that the PIP deductible applies to expenses and losses covered under PIP benefits and coverage." Fla. S. Bill Analysis & Fiscal Impact Statement of Jan. 25, 2016, § 5 for Bill SB 1036, p. 5. The use of the word "clarify" indicates that the proposed language was consistent with the current state of the law.

I would grant the petition for certiorari and quash the circuit court's order.